UNITED STATES OF AMERICA
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Case No. 14 CR 705-4 |
| v. | ) |
| | ) Judge Gary Feinerman |
| | ) |
| ELISEO BETANCOURT-PEREIRA | ) |

**Government's Sentencing Memorandum**

The United States of America by its attorney, Zachary T. Fardon, United States Attorney for the Northern District of Illinois, respectfully submits this memorandum in advance of the sentencing of defendant Eliseo Betancourt-Pereira, regarding the relevant factors under 18 U.S.C. § 3553(a) and the conditions of supervised release.

**I.      BACKGROUND**

   **A.     Proceedings to Date**

Defendant was arrested and charged in a multi-count criminal complaint in December 2014, as part of a DEA investigation into the Chicago cell of the Guerreros Unidos drug trafficking organization ("DTO"), led by codefendant Pablo Vega Cuevas. An indictment was subsequently returned against defendant, charging him with conspiracy to possess with intent to distribute and distribute a quantity of heroin, in violation of 21 U.S.C. § 846, (Count 1); possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) (Count 21); and distribution of heroin, in violation of 21 U.S.C. § 841(a)(1) (Counts 22 and 24). Defendant has pleaded guilty to Count 1 by way of a plea agreement.

### B. Defendant's Offense Conduct

Detail regarding defendant's offense conduct is set forth in the criminal complaint affidavit, the plea agreement, the Presentence Investigation Report, and the Government's Version of the Offense.

In a nutshell, the government developed evidence that beginning in at least approximately 2012 until September 2014, the drug trafficking organization led by co-defendant Pablo Vega Cuevas (the "Vega DTO") worked with individuals in Mexico and the Chicago area to transport and distribute narcotics that were concealed in commercial passenger buses that traveled between Mexico and Chicago. Vega was the leader of the Chicago cell of the Guerreros Unidos cartel in Mexico. During the investigation, law enforcement intercepted wire and electronic communications of the members of the Vega DTO, including the defendant. The investigation determined that the Vega DTO was responsible for the distribution of least approximately 100 kilograms of heroin on the streets of Chicago and surrounding areas. The defendant was a narcotics courier for the Vega DTO. At Vega's instruction, the defendant worked with co-defendants Alexander Figueroa and Wilfredo Santos Sorto Hernandez to deliver and pick up narcotics and narcotics proceeds from various customers of the Vega DTO.

### C. The Presentence Investigation Report

The government does not have any objections to the Presentence Investigation Report. The government concurs that the advisory Guidelines range for defendant is 108 to 135 months' imprisonment.

The government also concurs with the conditions of supervised release proposed by the Probation Officer, which are supported by the relevant § 3553(a) factors, namely, of protecting the public from further crimes of the defendant, and monitoring defendant's compliance with respect to his immigration-related conditions.[1]

## II. SENTENCING CONSIDERATIONS

The Supreme Court has instructed, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range . . . [T]he district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The government addresses the relevant § 3553(a) factors below.

### A. The Guidelines and the Need to Avoid Unwarranted Disparities

Among the relevant § 3553(a) factors are the applicable Guidelines range, any pertinent policy statements issued by the Sentencing Commission, and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(4), (a)(5), (a)(6). Moreover, although the Guidelines are merely advisory, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49.

There are at least two reasons the Court should give serious consideration to the Guidelines. First, the Guidelines are the sole factor in § 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of

---

[1] According to the PSR, Probation indicated that certain special conditions were also required (Box 22), but no such conditions were marked under that section.

minimizing unwarranted sentencing disparities. *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The only way to prevent widespread unwarranted disparities is to give serious consideration to the Guidelines. Second, the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46. It is true there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 551 U.S. 338, 351 (2007), and that there is "broad" sentencing discretion post-*Booker*. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). Yet the Commission is "a respected public body with access to the best knowledge and practices of penology." *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

In the event that this Court exercises its discretion to sentence outside the advisory range, there are guideposts for evaluating what the extent of the deviation should be and when a non-Guidelines sentence will be deemed unreasonable on appeal. These guideposts are set forth in Supreme Court and Seventh Circuit cases.

4

First, the Supreme Court instructs that it is "clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall*, 552 U.S. at 46. The degree of the deviation from the advisory Guidelines range is relevant in choosing the particular sentence. The Seventh Circuit has warned that major deviations from the advisory range are more likely to be unreasonable if the grounds for the deviation are "overstated mitigating factors" or "normal incidents" of the offense. *United States v. Carter*, 538 F.3d 784, 790 (7th Cir. 2008). Similarly, the Seventh Circuit admonishes that sentences relying on "common" factors, rather than "particularized" ones, to justify variances are less likely to be substantively reasonable. *Id.*; *see also United States v. Vrdolyak*, 593 F.3d 676, 681-83 (7th Cir. 2010).

### B. The Remaining § 3553(a) Factors

In terms of mitigation, defendant timely admitted guilt, and his involvement in the conspiracy. The defendant also participated in a successful safety-valve proffer with the government. In aggravation, however, the defendant knowingly became involved in the distribution of a significant amount of heroin into the streets of Chicago. Although the defendant was not involved for the entirety of the charged conspiracy, his actions allowed the DTO to continue its operations in the Chicago area. The defendant delivered and picked up large amounts of heroin and drug proceeds using a vehicle with a trap, and assisted in the unloading of the heroin that came concealed in commercial passenger buses.

Narcotics trafficking is "a serious crime having a detrimental impact on the community." *United States v. Hayden*, 775 F.3d 847, 850 (7th Cir. 2015). As the Court is undoubtedly well aware, drug trafficking creates very serious harms for the community—including drug addiction, poverty, violence and crimes by drug users to obtain money to pay for drugs, and violence and crimes by drug dealers to protect their territory. The City of Chicago and the surrounding collar counties have been experiencing the fallout from drug activity for far too long, with murder rates and incidents of violent crimes increasing over the years. Defendant's participation in the drug trade directly contributes to this mayhem on the streets of Chicago and the community, and has put the health and safety of citizens of this district in jeopardy. Heroin, as the Court is well aware, is a dangerous controlled substance that results in serious problems for our community. While the defendant did not personally distribute heroin to drug users, his knowing involvement in a sophisticated operation whose sole purpose was to sell vast amounts of heroin that eventually made its way to the streets is a significant factor to consider when determining the nature and circumstances of the offense.

**C.  Response to Defendant's Objections to the PSR**

The government takes no position with respect to the defendant's objections to the PSR, except his argument that he is entitled to a 2-level minor role reduction for his part in the drug conspiracy. The government submits that no such adjustment is warranted. Although the defendant did not have any type of managerial or supervisor role in the conspiracy and did meet the typical characteristics of a drug courier, he nevertheless engaged in repeated efforts to assist the DTO in distributing

6

a significant amount of heroin. The defendant worked, exclusively, for approximately six months to accomplish this goal. This was not a situation where the defendant delivered or picked up drugs just one time. The defendant repeatedly participated in activities that allowed for drugs to be distributed on the streets of Chicago. The extent of the defendant's involvement in the conspiracy does not warrant a minor role reduction.

Therefore, the sentence imposed by this Court must provide adequate deterrence both for this defendant and other would-be narcotics traffickers. Serious sentences send strong message that the federal court system and our community will not tolerate narcotics trafficking in the Chicago area, even those defendants who merely assist in the distribution of narcotics as couriers.

### III. CONCLUSION

The government respectfully requests that the Court sentence defendant to a term of imprisonment within the advisory Guidelines range and to the supervised release conditions specified by Probation.

        Respectfully submitted,

        ZACHARY T. FARDON
        United States Attorney

By:   s/ *Nicole M. Kim*
      NICOLE M. KIM
      Assistant U.S. Attorney
      219 South Dearborn Street, Room 500
      Chicago, IL 60604
      (312) 353-5300

Dated: November 11, 2016