UNITED STATES OF AMERICA
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Case No. 14 CR 705-3 |
| v. | ) |
| | ) Judge Gary Feinerman |
| | ) |
| ALEXANDER FIGUEROA | ) |

**Government's Sentencing Memorandum**

The United States of America by its attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, respectfully submits this memorandum in advance of the sentencing of defendant Alexander Figueroa, regarding the relevant factors under 18 U.S.C. § 3553(a) and the conditions of supervised release.

**I.   BACKGROUND**

   **A.   Proceedings to Date**

Defendant was arrested and charged in a multi-count criminal complaint in December 2014, as part of a DEA investigation into the Chicago cell of the Guerreros Unidos drug trafficking organization. An indictment was subsequently returned against defendant, charging him with conspiracy to possess with intent to distribute and distribute one kilogram or more of heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 (Count 1), unlawful use of a communication facility, in violation of Title 21, United States Code, Section 843(b) (Count 8), possession with intent to distribute one kilogram or more of heroin, in violation of Title 21, United States Code, Section 841(a)(1) (Counts 15 and 16), and distribution of one kilogram

or more of heroin, in violation of Title 21, United States Code, Section 841(a)(1) (Counts 22, 24, 25 and 27). Defendant pleaded guilty pursuant to a cooperation plea agreement to Count 1 of the indictment. He is scheduled to be sentenced on May 1, 2019.

### B. Defendant's Offense Conduct

Detail regarding defendant's offense conduct is set forth in the criminal complaint affidavit, the Presentence Investigation Report, and the Government's Version of the Offense.

In a nutshell, the government developed evidence that beginning in at least July 2013 and continuing until in or about October 2014, the drug trafficking organization led by co-defendant Pablo Vega worked with individuals in Mexico and the Chicago area to transport and distribute kilogram quantities of narcotics that were concealed in commercial passenger buses that traveled between Mexico and Chicago. During the investigation, law enforcement intercepted wire and electronic communications of defendant and other members of the Vega DTO. The investigation determined that the DTO was responsible for the distribution of least approximately 132 kilograms of heroin and 120 kilograms of cocaine on the streets of Chicago and surrounding areas during the period of the conspiracy.

Defendant delivered kilogram quantities of narcotics to various wholesale customers of the DTO including co-defendants Roberto Sanchez and Jose Rodriguez. Defendant also picked up and delivered significant sums of narcotics proceeds. Defendant, along with other members of the DTO, also unloaded narcotics that were hidden in concealed compartments, or "traps," in commercial passenger buses that

traveled between Mexico and the Chicago area. These buses were housed in at least three warehouses operated by the DTO in the Chicago, Illinois area.

During the conspiracy, the total amount of narcotics that defendant possessed with the intent to distribute and distributed was approximately 104 kilograms of heroin. In addition, he personally profited approximately $25,000 from his narcotics-related activities.

### C. Cooperation and Government's §5K1.1 Motion

After defendant's arrest in this case, he cooperated extensively with law enforcement.[1] As a result, the government is moving for a sentencing departure and recommending a sentence that includes a term of imprisonment of 66 percent of the low end of the applicable Guideline range.

## II. THE PRESENTENCE INVESTIGATION REPORT AND THE GUIDELINES

The government does not have any objections to the Presentence Investigation Report. The government concurs with Probation's calculation of the Guidelines and its conclusion that the advisory Guidelines range for defendant is 135 to 168 months' imprisonment.[2]

The government also concurs with the conditions of supervised release proposed by the Probation Officer, which are supported by the relevant § 3553(a) factors, namely, of protecting the public from further crimes of the defendant, and

---

[1] The government will provide further details of defendant's cooperation at the sentencing hearing.

[2] While the Guidelines calculations in the PSR were based on the November 2016 Guidelines, the Guidelines remain the same after applying the November 2018 Guidelines.

3

monitoring defendant's compliance with respect to his immigration-related conditions.

## III. SENTENCING CONSIDERATIONS

Sentencing has four purposes: retribution, deterrence, incapacitation, and rehabilitation. See United States v. Milbourn, 600 F.3d 808, 812 (7th Cir. 2010). Title 18, United States Code, Section 3553(a), sets forth the facts courts are to consider in fashioning a sentence that is sufficient but not greater than necessary to comply with these purposes. First, however, the Court must calculate the applicable Guidelines range, which provides a starting point and initial benchmark for sentencing. Gall v. United States, 552 U.S. 38, 49-50 (2007); see also 18 U.S.C. § 3553(a)(4). Although the Guidelines are advisory, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Id. at 49. Next, the Court must consider the other § 3553(a) factors. United States v. Omole, 523 F.3d 691, 697 (7th Cir. 2008). These factors include the need "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D)..

### A.     The § 3553(a) Factors

Defendant participated in an extensive drug trafficking conspiracy that involved the importation of multi-kilogram quantities of heroin concealed in commercial passenger buses traveling to the Chicago area from Mexico. He re-

distributed the narcotics to various wholesale customers, which resulted in those narcotics being provided down-stream to street-level customers. As the Court is undoubtedly well aware, drug trafficking creates very serious harms for the community—including drug addiction, poverty, violence and crimes by drug users to obtain money to pay for drugs, and violence and crimes by drug dealers to protect their territory. The City of Chicago and the surrounding collar counties have been experiencing the fallout from drug activity for far too long, with murder rates and incidents of violent crimes increasing over the years. Defendant's participation in the drug trade directly contributed to this cycle of violence and poverty on the streets of Chicago and the community, and has put the health and safety of citizens of this district in jeopardy. Heroin, as the Court is well aware, is a dangerous controlled substance that results in serious problems for our community. While defendant did not personally distribute heroin to drug users, his knowing involvement in a sophisticated operation whose sole purpose was to sell vast amounts of heroin that eventually made its way to the streets is a significant factor to consider when determining the nature and circumstances of the offense. A sentence that reflects the seriousness of this offense is appropriate in this case.

In mitigation, however, defendant took responsibility for his actions immediately after his arrest in this case. During subsequent meetings with the government, he provided truthful answers and information, some of which assisted in a separate prosecution of other individuals involved in drug trafficking activities. Also, defendant has only one prior conviction – a misdemeanor conviction – and so it

appears there is less of a need for the sentence to protect the public from any recidivist behavior.

IV. CONCLUSION

Based on the foregoing, the government respectfully requests that the Court depart from the applicable Guidelines range pursuant to the government's § 5K1.1 motion and sentence defendant to a term of imprisonment of 66% of the low-end of the applicable Guidelines range and to the supervised release conditions specified by Probation.

                              Respectfully submitted,

                              JOHN R. LAUSCH, JR.
                              United States Attorney

By:   s/ *Nicole M. Kim*
        NICOLE M. KIM
        Assistant U.S. Attorney
        219 South Dearborn Street, Room 500
        Chicago, IL 60604
        (312) 353-5300

Dated: April 19, 2019