UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>JOSE RODRIGUEZ | No. 14 CR 705-7<br><br>Judge John Gary Feinerman |

**GOVERNMENT'S OBJECTIONS TO THE PRESENTENCE**
**INVESTIGATION REPORT AND SENTENCING MEMORANDUM**

Over the course of less than a week in 2014, defendant Jose Rodriguez delivered approximately $600,000 as payment for narcotics and obtained approximately 20 kilos of heroin in separate transactions. His conduct was part of a large-scale Mexico-based drug trafficking organization that moved massive amounts of narcotics into the Chicago area. The United States respectfully recommends that the court sentence defendant Jose Rodriguez to a term of imprisonment of 135 months, which is the low end of the applicable Guidelines range. Such a sentence will reflect the seriousness of defendant's offense, provide just punishment, and afford adequate deterrence.

**I.      Rodriguez's Criminal Conduct**

On June 4, 2014, defendant Jose Rodriguez made two separate deliveries of approximately $300,000 in cash, for a total of $600,000, to co-defendants Alexander Figueroa and Eliseo Betancourt. PSR ¶¶ 7-8. At that time, defendant knew that Figueroa and Betancourt were involved in narcotics trafficking and that the meetings were for the purpose of delivering narcotics proceeds to them. PSR ¶ 8. These drugs were originally transported from Mexico, stored in the suburbs of Chicago, and then

distributed throughout the Chicago area. PSR ¶ 6. Defendant knew the purpose of his large cash payments, in part, because he was also involved with obtaining narcotics as part of the drug trafficking operation. Specifically, just three days later, defendant received approximately 20 kilograms of heroin from Figueroa, who placed them in a hidden compartment inside defendant's SUV. PSR ¶ 10. After driving away from that transaction, defendant was stopped by law enforcement, who recovered 1.6 grams of cocaine that defendant also intended to sell. *Id*.

## II. The Sentencing Guidelines Calculations

The government agrees with the U.S. Probation Office that the total offense level for the offense of conviction, money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Group One) is 30. PSR ¶¶ 19-25. With respect to the stipulated offense, possession with intent to distribute one kilogram or more of heroin and a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Group Two), the government agrees that the base and total offense level is 34. PSR ¶ 26.

However, the government disagrees with the Probation Office's determination that the offense of conviction and the stipulated offense should not be grouped. PSR ¶ 34. Guideline §3D1.2(d) provides that when the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature, then Group One and Group Two are grouped together. The Probation Office focuses on the fact that the $600,000 related to defendant's money laundering offense was not used to purchase the 20 kilograms of heroin underlying

the possession with intent to distribute conduct. That narrow interpretation of §3D1.2 overlooks that defendant's money laundering involved the proceeds from the buying and selling of narcotics, which is the offense comprising defendant's relevant conduct. Further, the money laundering and narcotics trafficking occurred three days apart and were part of the same course of conduct. Indeed, defendant delivered the $600,000 and received the 20 kilos of heroin from the same person, co-defendant Alexander Figueroa. That overlapping conduct falls squarely within Guideline §3D1.2(d) and the offense of conviction and stipulated offense should be grouped. If the two offenses are grouped, then the total offense level is 34, pursuant to Guideline § 3D1.3(b).

The government agrees with the Probation office that defendant has demonstrated acceptance of responsibility and that the offense level should decrease by three levels pursuant to Guideline § 3E1.1(a) and (b). PSR ¶ 39-40. It is the government's position that the total adjusted offense level is 31.

The government also agrees that defendant's criminal history category is III on the basis of four criminal history points. PSR, ¶¶ 49-57.

Finally, it is the government's position that defendant's advisory Guidelines range is 135 to 168 months' imprisonment.

### III. The Section 3553(a) Factors Support a Sentence at the Low End of the Guidelines Range.

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). "The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."

3

*United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). "[A] district court that sentences within the Guidelines necessarily gives weight and consideration to avoiding unwarranted disparities." *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010). Although a sentence within the Guidelines range is presumptively reasonable, *United States v. Cano-Rodriguez*, 552 F.3d 637, 639 (7th Cir. 2009), the court must consider the factors set forth in Title 18, United States Code, Section 3553(a), in determining an appropriate sentence.

Considered in this case, those factors support the imposition of a sentence at the low end of the Guidelines range. Further, such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the defendant's offense, to promote respect for the law, to provide just punishment for the defendant's crime, to afford adequate deterrence to similar criminal conduct, and to avoid unwarranted sentence disparities among defendants.

### A. The Nature and Circumstances of the Offense

Rodriguez was involved in a large-scale drug trafficking operation that trafficked heroin from Mexico to the Northern District of Illinois. His crimes of conviction involved the payment of $600,000 for a shipment of heroin, and his stipulated offense involved the possession with intent to distribute of 20 kilos of heroin. At those levels, there is no confusing that organized drug cartels were ultimately responsible for trafficking those narcotics.

The destructive impact of drugs on communities is well documented. Narcotics divert people from their families and work and lead them to addiction and, through

4

their demand for more drugs, to exploitation by street dealers. That demand, in turn, sustains the large trafficking organizations that bring drugs into this district, organizations like the one with which Rodriguez was working. Violence and the threat and fear of violence pervade the drug trade along every step of the way, from the origin point of these drugs to the street and back again.

**B.     The History and Characteristics of the Defendant**

Now age 40, Rodriguez was one of five children born in Texas and raised in Chicago. PSR ¶¶ 79-85. Defendant observed instances of domestic violence in his household until his parents divorced when he was 12. PSR ¶¶ 79-80. Nevertheless, defendant reported a "good" childhood in which he received adequate food, shelter, and clothing. PSR ¶ 85. Defendant has three children with his longtime partner, and he has good relationships with his children. PSR ¶ 88.  Defendant has a history of substance abuse, dating back to when he was just a child at the age of 12 and continuing to shortly before his arrest for this offense. PSR ¶ 99-100. That long-term addiction undoubtedly played a role in his involvement with a drug trafficking organization.

In aggravation, defendant had a spotty employment record for the entirety of his life and has a significant criminal history.  He has eight prior adult criminal convictions for offenses including aggravated unlawful use of a weapon, possession of burglary tools, and numerous narcotics offenses. PSR ¶¶ 49-56. In addition to his convictions, defendant also amassed 17 additional arrests. PSR ¶¶ 61-77. As a result

5

of this criminal history, defendant is appropriately placed in Criminal History Category III.

Accordingly, defendant's history and characteristics warrant a sentence at the low end of the Guidelines range.

### C. The Seriousness of the Offense and the Need to Promote Respect for the Law, to Provide Just Punishment, and to Afford Adequate Deterrence

The possession and distribution of illegal narcotics are very serious offenses that threaten the safety of the public. The narcotics distributor is an integral player in an organization that requires many people to effectively execute its purpose, to traffic illegal drugs. Drug trafficking organizations thrive on the misery of drug addiction that plagues the United States. In one day, defendant various narcotics in significant quantities.

Drug trafficking is not a victimless crime. Narcotics trafficking significantly impacts countless people's lives, including the addicts that purchase the narcotics, the family, friends, and employers of those drug abusers, and the community left with the aftermath of addiction and violence that accompanies drug trafficking and abuse. Defendant's sentence should reflect the seriousness of this offense.

Defendant's sentence should be severe enough to adequately deter him from engaging in drug trafficking again, and to sufficiently deter others from engaging in this conduct. Accordingly, a sentence at the low end of the guidelines range will provide just punishment for defendant's offense, promote respect for the law, and afford adequate deterrence.

## IV. Government's Position on Supervised Release

Given the extent of defendant's criminal history and his significant substance abuse problems, the government recommends that the court impose the maximum period of 3 years' supervised release with the following conditions:

### A. Mandatory Conditions

The government respectfully requests that defendant be required to comply with the following mandatory conditions set forth in 18 U.S.C. § 3583(d) and Guideline § 5D1.3(a):

1. Defendant shall not commit another federal, state, or local offense.

2. Defendant shall not unlawfully possess a controlled substance.

5. Defendant shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

6. Defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on supervised release and at least two periodic tests thereafter up to 104 periodic tests for use of a controlled substance during each year of supervised release.

The government recommends these conditions to provide adequate deterrence to criminal conduct and protect the public from further crimes of defendant. These conditions enhance the ability of the probation officer to target interventions with the goal of reducing defendant's risk of re-offending.

### B. Discretionary Conditions

The government requests that defendant be required to comply with the following discretionary conditions permitted by 18 U.S.C. § 3583(d) and Guideline § 5D1.3(c) and (d), in order to facilitate supervision by the probation officer, support

defendant's rehabilitation and reintegration into the community, promote deterrence, and because they are otherwise appropriate in this case:

(1) Defendant shall provide financial support to any dependents if financially able to do so.

(4) Defendant shall seek, and work conscientiously, at lawful employment or pursue conscientiously a course of study or vocational training that will equip the defendant for employment.

(6) Defendant shall refrain from knowingly meeting or communicating with any person whom defendant knows to be engaged, or planning to be engaged, in criminal activity.

(7) Defendant shall refrain from any use of alcohol and from any use of a narcotic drug or other controlled substance.

(8) Defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon.

(9) Defendant shall participate, at the direction of a probation officer, in a substance abuse treatment program.

(14) Defendant shall remain within the jurisdiction where he is being supervised, unless granted permission to leave by the court or a probation officer.

(15) Defendant shall report to the probation office in the federal judicial district to which he is released within 72 hours of his release from imprisonment. Defendant shall thereafter report to a probation officer at reasonable times as direction by the court or a probation officer.

(16) Defendant shall permit the probation officer to visit the defendant at home, work, a community service location, or other reasonable location specified by a probation officer and to confiscate any contraband observed in plain view of the probation officer.

(17) Defendant shall notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace

and, absent constitutional or other legal privilege, answer inquiries by a probation officer. Defendant shall truthfully answer any inquiries by a probation officer, subject to any constitutional or other legal privilege.

(18) Defendant shall notify a probation officer promptly, within 72 hours, after being arrested, charged with a crime, or questioned by a law enforcement officer.

## C. Special Conditions

In light of the continuing need to protect the public and to ensure that the probation officer can satisfy his or her duty to remain informed about the defendant, as well as to support defendant's rehabilitation and reintegration into the community, the government concurs with the PSR's recommendations that the Court impose the following special conditions of supervision pursuant to 18 U.S.C. § 3563(b)(22) and § 3583(d):

(1) Defendant shall participate in a GED preparation course and seek to obtain a GED within the first year of supervision.

(2) Defendant shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

(3) Defendant shall, if unemployed after the first 60 days of supervision, perform at least 20 hours of community service per week at the direction of the U.S. Probation Office until gainfully employed.

(11) Defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the Court.

(13) Defendant shall observe one Reentry Court session.

9

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that the court impose a sentence of 135 months' imprisonment, which is at the low end of the advisory guidelines range, a three-year term of supervised release, and a $100 special assessment.

Dated: December 14, 2021

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ James P. Durkin*
JAMES P. DURKIN
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300